## David Rice v. William B. O'Neal.

1. INJUNCTION—*when agreement properly enforced by.* Where one agrees with another to refrain for a stated period from engaging in a particular business in a certain locality, such agreement may, in the event of violation, be enforced by injunction; and future breaches are presumed to be intended from the fact of previous ones.

2. AMENDMENTS—*when properly allowed.* Amendments upon the hearing of a chancery cause are properly allowed where they do not change the character of the scope of the bill.

Injunction proceeding. Appeal from the Circuit Court of Champaign County; the Hon. SOLON PHILBRICK, Judge, presiding. Heard in this court at the November term, 1904. Affirmed. Opinion filed April 20, 1905.

CUNNINGHAM & BOGGS, for appellant.

RAY, DOBBINS & RILEY, for appellee.

MR. JUSTICE GEST delivered the opinion of the court.

This bill is brought by appellee, O'Neal, to enjoin appellant from carrying on the business of buying and selling lumber and building material in the village of Sadorus in Champaign county. The bill avers that on the first day of February, 1903, O'Neal and Rice were both engaged in the lumber business at Sadorus, and that an agreement was there entered into between them whereby O'Neal bought the stock and trade of Rice and paid him therefor, and Rice in consideration thereof agreed that he would not engage in that business again in that locality in opposition to O'Neal; that Rice since the making of such agreement has violated the same in making sales of lumber to divers parties named in that locality, and is about to make like contracts with other parties, and will continue to carry on such business in that locality in opposition to complainant unless restrained. The cause was referred to the master who made report. Exceptions were taken by both parties to the findings of the master. Upon the hearing the court allowed complainant to amend his bill, sustained complainant's exceptions to the master's report, overruled

those of defendant, and entered decree enjoining defendant, Rice, as prayed in the bill.

Numerous errors have been assigned which in substance may be resolved to a few : first, that the alleged agreement is not proven; second, that no violation of the agreement is proven; third, that there is no proof of defendant's intention to violate the agreement in the future; fourth, that the amended bill materially changes the issues and no opportunity was given to controvert the new issues; and fifth, that the remedy of the complainant is at law and not in equity.    We think the evidence satisfactorily establishes the agreement as set out in the bill.    The proof as to violation of the agreement is in substance that at different times in the summer following the making of the agreement, several persons residing in the immediate vicinity of Sadorus applied to Rice to get lumber for them from dealers in Chicago; that Rice got the lumber on their orders; that they paid him for the lumber; that the profit to O'Neal on such purchases if they had been made of him would have been about $150; that the purchases were made through Rice because the lumber could be got cheaper through him than of O'Neal, or any other person; that it was reported about by builders and others that Rice would get lumber for parties who wanted it cheaper than it could be got of other persons.    One witness, Goudie, says :   " I talked over with Rice about getting the lumber before I got it.   He said he could get the lumber or let me have it at just what it cost him; that he would order the lumber for me.   He said he was out of the lumber business but that he would order it for me."    Rice denies Goudie's statement, denies he had anything to do with some of the transactions, says he made nothing out of any of them, and there is evidence tending to show that his connection with the various purchases was as a matter of accommodation and not of profit.    It does not appear that he had any lumber yard, office or place of business as a lumber dealer in Sadorus.    Do transactions such as above stated constitute violations of the agreement made between the

parties? We entertain no doubt that they do. Rice's agreement was not merely that he should not open a lumber yard in Sadorus. The substance of his agreement was that he would not do any business of that kind in Sadorus, either directly or indirectly, for profit or without profit, from good-will to his neighbors or from ill-will to O'Neal, in a lumber yard established by him or at his home, or on the streets or elsewhere within the limits described. The transactions mentioned, if done as claimed without profit, were more injurious to O'Neal than if done with a profit. O'Neal was lawfully seeking by this agreement to increase the profits of his business. The transactions mentioned were calculated to interfere directly with his business and reduce his profits. The evidence shows that the purchasers went to Rice for the very reason that they could buy cheaper of him. If it be allowable to Rice under the contract to sell or assist in selling lumber at Sadorus in the manner designated, to some persons, then he may to any and all. Doubtless his business of selling lumber at cost would increase rapidly and doubtless O'Neal's business of selling lumber at a profit would decrease rapidly.

It is urged that there is no proof that defendant intended to violate the agreement in the future. There was no proof in direct terms that defendant had threatened to continue in the same line of conduct nor was any such proof necessary. It appears by this record that defendant denies that he made the alleged contract, denies that he has done any acts which would constitute a violation thereof. He insists that he has the right to sell lumber when and where and to whom he may please. The proof shows that he has repeatedly violated the agreement, and we conclude that unless in some manner prevented he will continue so to do. Threats expressed in words are not so significant as those expressed in deeds. There was no error in allowing the complainant to amend the bill at the hearing. The amendments merely struck out of the bill unnecessary averments. The character and substance of the bill was in no manner changed. The original bill and the amended bill sought

the same thing, that the defendant be enjoined from violating his agreement, and the premises in each were in substance the same and were sufficient upon which to base the relief asked. No objection was made by defendant to the action of the court in allowing the amendments, nor was it then suggested that new issues were thereby made, and it is plain that no new issue was made.

The only remaining assignment of error which we deem it necessary to notice is, that the remedy of complainant is at law, that equity has no jurisdiction. It is contended that because the proof shows specific transactions, sales of lumber in particular amounts and of particular values, and further shows the profit O'Neal would have made on these sales if they had been made by him, therefore a complete remedy existed at law. The contention is evidently based upon a misapprehension as to the character of proof admissible to show damages in suits at law upon such contracts and also as to the measure of damages therein. In such suits the plaintiff does not seek to recover the profits as profits which the defendant may have received upon certain specific sales by him made. Nor is he limited to proof of such sales nor is he bound to make proof of specific dates, amounts, quantities and values of sales, or profits therein. The plaintiff in such an action sues to recover damages for breach of defendant's agreement to keep out of the business, and any proof is admissible for plaintiff upon the question of damage which reasonably tends to show damage or the amount thereof, and the jury render their verdict for such sum as upon consideration of all the evidence they deem just compensation for the damages sustained. In all such cases the verdict must be necessarily in large measure a mere estimate, sometimes verging upon speculation, always unsatisfactory and questionable in amount on one side or the other; but such is the best that can be done at law. In equity, however, the procedure and end attained are entirely different. Equity does not award damages but stops the source of damage. Equity does not estimate or speculate as to the amount of evil done but prevents the doing it. It

commands and compels the wrong-doer to cease from the evil where the law simply punishes for the evil done and is powerless to prevent its repetition. The remedy at law is not plain nor adequate nor complete. The remedy furnished by equity does complete justice. Whatever the doctrine may have been in earlier years as to the jurisdiction of courts of equity over contracts of the kind here in question, it has become firmly established, in later years, that equity will take jurisdiction and enforce their specific performance, and this it does because there is no plain, adequate and complete remedy at law. This court said in the case of Watson v. Ross, 46 App. 188, a case of just the same character, "It is alleged and proved that he (the defendant) is insolvent, and though it appears that a suit at law was brought and is still pending for damages for the breach of contract, the jurisdiction of a court of equity is clear enough, not on the ground of insolvency merely but upon the general doctrine applicable in such cases."

The decree of the Circuit Court will be affirmed.

*Affirmed.*